## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeffrey Weisen,

      Plaintiff,

v.

Northern Tier Retail LLC doing business as
Speedway and Agree Bloomington MN, LLC,

      Defendants.

Case No. 19-cv-2884 (JNE/ECW)

ORDER

Plaintiff Jeffrey Weisen alleges Defendants Northern Tier Retail LLC doing

business as Speedway and Agree Bloomington MN, LLC (collectively "Speedway")

violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") at the

Speedway store and gas station located at 1280 West 98th Street, Bloomington,

Minnesota ("Bloomington Speedway"). This matter is before the Court on Weisen's

"Motion to Strike Untimely Disclosed Video and Require Defendants to Disclose the

Identity of the Clerk Appearing on the Video and Permit Plaintiff to Immediately Depose

Him," Speedway's Motion to Exclude Expert Testimony, Weisen's Motion for Partial

Summary Judgment, and Speedway's Motion for Summary Judgment. ECF Nos. 83, 60,

52, 46.

## BACKGROUND

### I.    General Background

The ADA protects the rights of individuals with disabilities with respect to places

of public accommodation, commercial facilities, transportation, and other places or

services. Title III of the ADA prohibits places of public accommodation from

discriminating against persons with disabilities and requires them to be readily accessible to and independently usable by persons with disabilities. 42 U.S.C. §§ 12181-89. The Department of Justice has promulgated rules implementing Title III, including the 2010 ADA Standards for Accessible Design ("2010 Standards").[1]

It is undisputed that the Bloomington Speedway, a convenience store and gas station, is a place of public accommodation. It is also undisputed that Weisen is a disabled individual. Weisen became disabled as a result of a motorcycle accident in 2016 and is dependent on a wheelchair.

In the summer of 2019, Weisen complained to his childhood friend, Jerald Boitnott, that he had fallen in a gas station restroom as a result of reaching for a soap dispenser that was too high. Boitnott, a disabled person who litigated ADA cases with the assistance of the Throndset Michenfelder Law Office, introduced Weisen to Craig Seifert, an investigator employed by the Throndset Michenfelder Law Office. The three of them "talked about all the ADA stuff." Olson Decl. Ex. A, J. Weisen Dep. 23:18-22, ECF No. 50-1. Weisen learned that he could make money from ADA litigation and that it could "make the people correct the problems." *Id.* at 25:4-7.

With the assistance of the Throndset Michenfelder Law Office, Weisen has since initiated over ninety ADA lawsuits, though he does not know the total number. In many of these lawsuits, Weisen does not know whether the defendants have remediated their

---

[1] The 2010 Standards relevant here are in appendix D to 36 C.F.R. part 1191.

alleged ADA violations. When first deposed, Weisen could not remember whether the instant case was active.

## II. The Bloomington Speedway Case

Weisen and his wife stopped at the Bloomington Speedway on Labor Day, 2019.[2] Weisen intended to enter the store but saw multiple external barriers, which deterred him. These barriers included a steep slope on the disabled-accessible parking spaces and access aisles, an obstructed access aisle, a broken and deteriorated parking lot surface, and an obstructed access route. As a result, Weisen did not get out of the car.

Weisen's wife entered the Bloomington Speedway alone to use the restroom and buy something to eat and drink. While inside, she measured potential ADA violations against her body. When she returned to the car, she told Weisen about the potential violations she had seen inside the store. Weisen then contacted Seifert.

Weisen served Speedway with the instant case on October 24, 2019. In his original complaint, Weisen alleged he visited the Bloomington Speedway "[w]ithin the applicable limitations period." Notice of Removal Ex. A, Compl. ¶ 21, ECF No. 1-1. On October 28, 2019, Speedway's in-house counsel contacted Weisen's attorneys requesting the date and time Weisen had visited the Bloomington Speedway. She specified that she needed this information to preserve evidence. One of Weisen's attorneys replied that he did not engage in informal discovery unless it was part of an effort to resolve the case. Because Weisen's attorney believed that Speedway had "no intention of working toward an early

---

[2] The stop may have taken place at some other point over the Labor Day weekend, but the Court will refer to Labor Day for ease of reference.

resolution of this clearly valid case," he declined to provide the date of Weisen's visit. Moosbrugger Decl. Ex. B, at 1, ECF No. 49-1. Speedway's in-house counsel responded that she was not proposing informal discovery but required the date Weisen visited the Bloomington Speedway to preserve evidence.

Speedway subsequently moved for a more definite statement under Federal Rule of Civil Procedure 12(e). In response, Weisen filed an amended complaint, alleging he visited the store in early September 2019. Speedway attempted to retrieve the surveillance video footage from early September 2019, but by that time the footage had been overwritten. Speedway first learned that Weisen visited the Bloomington Speedway on Labor Day of 2019 when deposing Weisen's wife on September 8, 2020.

Weisen and his wife both testified that they returned to the Bloomington Speedway around 10:00 P.M. on November 21, 2019.[3] They both asserted that Seifert had requested they return to see if Speedway had remediated any of the ADA violations. According to Weisen and his wife, they parked their car, a red Dodge Charger, in the first accessible parking space. When Weisen's wife unloaded his wheelchair, the wheelchair rolled away because of the steep slope. After retrieving the wheelchair, Weisen's wife

---

[3] In his declaration accompanying his Motion for Partial Summary Judgment, Weisen states, "I routinely pass by the [Bloomington Speedway] on my way to and from Faribault, Minnesota, where I go two or three times a year to visit friends. I have visited the [Bloomington Speedway] on numerous occasions, and plan to continue to do so." Weisen Decl. ¶ 3, ECF No. 55. However, the instant action specifically pertains to Weisen's visits on Labor Day and November 21, 2019. *See e.g.*, Pl.'s Mem. Supp. Mot. Partial Summ. J. 2-3, ECF No. 54. At oral argument, Weisen's counsel admitted that there is no evidence in the record as to whether Weisen encountered any ADA violations during his prior visits.

helped him into it. Weisen's wife recalled that she then rolled Weisen around a pallet of

firewood and pulled him over a curb and onto the sidewalk. Weisen recalled that he

struggled by himself to enter the store while his wife looked at the gas pumps.

Both Weisen and his wife testified that they had a discussion with the store clerk

at the cash register. When describing the store clerk, Weisen recalled, "He was bigger

than me, and I'm six foot. He was a big guy." Olson Decl. Ex. E, 2nd Weisen Dep.

321:3-7, ECF No. 50-1.

However, Speedway's November 21, 2019, surveillance video footage does not

show Weisen or his wife. The various camera angles include most of the store's parking

lot, the store's entrance, and the cash register. The video does not show a red Dodge

Charger, Weisen's wife chasing after a wheelchair, Weisen struggling to enter the store

(either himself or with his wife's assistance), or Weisen and his wife conversing with the

store clerk.

Speedway has since undertaken interior and exterior remediations at the

Bloomington Speedway. Speedway's expert, Julee Quarve-Peterson, opines that the

Bloomington Speedway is now ADA-compliant.

## EVIDENTIARY CLAIMS

### I. Speedway's November 21, 2019, Surveillance Video Footage

Speedway relies on surveillance video footage to show that Weisen and his wife

were not at the Bloomington Speedway around 10:00 P.M. on November 21, 2019, as

they testified they were. In his Memorandum in Opposition to Speedway's Motion for

Summary Judgment, Weisen argues the Court should disregard the video for three

reasons: (1) the disclosure of the video was twenty-nine days late; (2) Speedway has not disclosed the identity of the store clerk appearing in the video; and (3) the video is not authenticated. Weisen also moves to strike the video footage in his "Motion to Strike Untimely Disclosed Video and Require Defendants to Disclose the Identity of the Clerk Appearing on the Video and Permit Plaintiff to Immediately Depose Him." In this motion, Weisen elaborates on the three arguments he raised in his earlier memorandum.[4] The Court addresses the three arguments in turn.

First, Weisen argues the video should have been timely disclosed under Federal Rule of Civil Procedure 26(a) because it is not solely for impeachment purposes. "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, Rule 26(a) provides that a party's required disclosures do not have to provide information on evidence used "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(ii).

"Impeachment is 'an attack on the credibility of a witness.'" *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008) (quoting *Sterkel v. Fruehauf Corp.*, 975 F.2d 528, 532

---

[4] In this motion Weisen also goes through several of his discovery requests and Speedway's responses, though he does not raise a related argument in his discussion section. To the extent Weisen is arguing that Speedway's discovery responses were deficient, such a discovery dispute is untimely. The deadline for non-dispositive motions related to fact discovery was November 2, 2020. *See* Order 2, ECF No. 44. Moreover, as discussed below, any late disclosure was harmless.

(8th Cir. 1992)). Impeachment by contradiction is an attack "showing that facts asserted or relied upon in [a witness's] testimony are false." *Id.*

Weisen argues the video is not solely for impeachment because it "clearly goes to one of Defendants' prime lines of Defense: whether Mr. Weisen lacks standing because he was never at the premises on one of the numerous days he and his wife testified that he was – November 21, 2019." Pl.'s Mem. Supp. Mot. Disc. 10, ECF No. 86. Weisen also cites various out-of-circuit case law to show that the video footage is not offered solely for impeachment purposes. These cases hold that evidence is not solely for impeachment if it has some substantive value. For example, the surveillance video footage in *Chiasson v. Zapata Gulf Marine Corp.* showed the plaintiff engaged in daily activities. 988 F.2d 513, 517 (5th Cir. 1993). The district court found the video was used solely for impeachment purposes because it challenged the credibility of the plaintiff's testimony that she was unable to carry on daily activities without pain. *See id.* The Fifth Circuit reversed, holding that the video was part substantive because it evidenced the severity of the plaintiff's pain and the extent to which she lost enjoyment from normal activities. *Id.* at 517-18.

The video footage at issue here, however, does not show Weisen at all. As Weisen points out, Speedway is using the video to contradict his and his wife's testimony that he was at the Bloomington Speedway on November 21, 2019. Speedway has not offered the video for any other purpose and Weisen points to no other purpose. That Weisen's and his wife's testimony is blatantly contradicted will affect Weisen's standing, as discussed below, but that does not alter the impeachment purpose of the video.

Furthermore, even assuming the video footage was not solely impeachment evidence, any late disclosure was harmless. If a failure to disclose is harmless, no sanction is required. Fed. R. Civ. P. 37(c)(1). In *Hillesheim v. Holiday Stationstores, Inc.*, the plaintiff argued that the district court erred when it refused to strike an affidavit, which the defendant had divulged for the first time in its motion for summary judgment. 903 F.3d 786, 790 (8th Cir. 2018). Even if the late disclosure had violated Federal Rule of Civil Procedure 26, the court found it was harmless because the plaintiff was already aware of the information in the affidavit. *Id.* It was the facts alleged in the affidavit, not its late disclosure, that impacted the plaintiff. *Id.* That the plaintiff did not move for a continuance or attempt to depose the affiant earlier further "[cast] doubt on his position that timely disclosure would have made a difference." *Id.*

Here, any late disclosure was likewise harmless because Weisen knew whether he was at the Bloomington Speedway on November 21, 2019, as he repeatedly represented.[5] Weisen claims that the late disclosure prevented him from deposing the store clerk in the video, yet Weisen should have been aware there was a clerk assisting him and could have sought discovery related to the clerk. As in *Hillesheim*, it is not the video's late disclosure that harmed Weisen but the fact that the video disproves his and his wife's deposition testimony. Additionally, Weisen failed to move for a continuance or schedule modification to attempt to depose the store clerk when Speedway disclosed the video on

---

[5] Weisen never claims that he mistakenly referred to November 21, 2019, instead of a different day.

October 30, 2020. This casts doubt on his position that disclosure twenty-nine days earlier would have made a difference.

Second, Weisen argues the video should be disregarded because Speedway has not disclosed the identity of the store clerk appearing in the video. Weisen never explains how the failure to disclose the identity of someone in a video impacts the admissibility of the video itself. Weisen cites *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004 (8th Cir. 1998), for its holding that a party who fails to timely disclose information is prohibited from using that information unless the failure was substantially justified or harmless. However, the court in *Trost* affirmed the district court's decision to exclude the plaintiff's expert evidence because the expert evidence itself was late. 162 F.3d at 1008. *Trost* would thus be more relevant if Speedway used, and Weisen was seeking to exclude, the testimony of the store clerk himself.

Finally, Weisen argues the Court should disregard the video footage because it is not authenticated. Federal Rule of Evidence 901 governs the authentication of evidence. "To satisfy the requirement of authenticating" an item of evidence, the proponent of the item must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) lists examples of evidence that satisfy the requirement, including "[t]estimony that an item is what it is claimed to be." Here, Speedway has submitted a declaration from its general counsel testifying that the surveillance video footage is what it is claimed to be.

In sum, the Court rejects Weisen's arguments to disregard the surveillance video footage.

## II.     Speedway's Store Clerk

Weisen also moves to compel Speedway to identify the store clerk in the video and make him available for deposition. Weisen provides little support outside of Federal Rule of Civil Procedure 16(b)(4), which allows a schedule modification "only for good cause and with the judge's consent." Weisen has not established good cause. Weisen never explains why he did not seek to discover the store clerk's identity within the discovery period.

The Court denies Weisen's "Motion to Strike Untimely Disclosed Video and Require Defendants to Disclose the Identity of the Clerk Appearing on the Video and Permit Plaintiff to Immediately Depose Him."

## III.     Seifert's Expert Testimony

Speedway moves to exclude the testimony of Weisen's expert witness, Craig Seifert. Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit has laid out a three-part test for district courts to apply when screening expert testimony under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). District courts should exclude an expert's opinion only if it is "so fundamentally unsupported that it can offer no assistance to the jury." *Id.* (citing *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997)). Doubts about an expert's opinion should be resolved in favor of admissibility. *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006)).

In its Motion to Exclude Expert Testimony, Speedway argues that the Court should exclude Seifert's testimony because Weisen's attorneys directed Seifert's investigation, Seifert is not qualified, and Seifert's investigation methods were generally unreliable. Weisen responds that Speedway's arguments go to the weight of Seifert's expert testimony and not its admissibility. Weisen's briefing does not specify what Seifert is an expert in, but Speedway questions his qualifications as an expert in ADA accessibility compliance. At oral argument, Weisen asserted Seifert is an expert in measurements with respect to ADA cases and in costs to correct ADA violations.

### a. Seifert's Methods

Speedway's first and third arguments concern the reliability of Seifert's measurement methods. Weisen claims that Seifert's measurements were reliable because Seifert used common tools that led him to conclusions which would be useful to the finder of fact, but presents no evidence concerning Seifert's investigation methods.

"To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence . . . that the methodology underlying his conclusions is scientifically valid." *Id.* at 1000 (quoting *Marmo*, 457 F.3d at 757-58).[6] Though the factual basis of an expert's opinion goes to the weight of the expert's testimony, *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted), any step the expert has taken that renders the analysis unreliable renders the expert's testimony inadmissible, *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d at 1001-02 (affirming the district court's decision to exclude expert testimony that was based on a flawed assumption). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Id.* at 1001 (citation omitted).

---

[6] When analyzing the reliability requirement, courts may look to various factors, such as those laid out in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993). *See Lauzon*, 270 F.3d at 686-87 (discussing the factors laid out in *Daubert* as well as other factors). However, the reliability inquiry is "meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999)).

Here, Weisen has not satisfied his burden. The record reveals that Seifert followed Weisen's attorneys' instructions instead of a reliable methodology. Seifert testified that he did not take a certain measurement because he "wasn't instructed to." Olson Decl. Ex. B, Seifert Expert Dep. 87:17-19, ECF No. 64-1. Whether Seifert took photos of his measurements was "dependent entirely" on the attorneys' instructions. *E.g.*, *id.* at 77:8-10, 78:14-18, 86:5-13. Seifert also admitted that one of Weisen's attorneys, Chad Throndset, was the one recording his measurements.

When discussing his investigation in a related case, Seifert conceded that he was "just doing was [he was] instructed to do." *Id.* at 57:18-20. Seifert testified that he followed Weisen's attorneys' instructions when deciding everything from where to take his measurements and where to place his tools to how many measurements to take. *Id.* at 48:23-49:2 ("I was just told to place the tool and read off the numbers."), 49:3-6 (stating that he was "following the instructions of Mr. Michenfelder and Mr. Throndset"), 49:7-11 ("I just took the measurements as I was instructed."), 53:16-20 ("I was instructed to take a number of measurements."), 54:2-8 (stating he was measuring a specific area because he "was instructed to").

Speedway's expert, Quarve-Peterson, witnessed Seifert's investigation of the Bloomington Speedway. Quarve-Peterson confirms that Seifert took directions from Weisen's attorneys. According to Quarve-Peterson, "If Seifert were sent to a site alone, it is questionable if he would know what, how or why to measure." Olson Decl. Ex. D, at 4, ECF No. 64-1. Quarve Peterson also saw that the attorneys recorded Seifert's measurements for him and that "[n]ot all measurements were written down." *Id.* at 2.

Seifert's investigation was problematic even looking past Seifert's reliance on Weisen's attorneys. Of particular note, Quarve-Peterson saw that Seifert did not use his slope measuring device properly. First, Seifert wobbled the device back and forth while taking readings and may have recorded several slope readings while the numbers on the device were still changing. In essence, Seifert jumped on the scale and recorded the weight while the dial was still moving. Second, Seifert took several readings after twisting the bottom of the device, which may have affected the accuracy of the readings. Third, though Seifert testified that he calibrated the slope measuring device at his home, he did not calibrate the device at the Bloomington Speedway.

The location of Seifert's measurements also calls into question the accuracy of his findings. Quarve-Peterson noted that Seifert took measurements outside of the relevant locations and that there was a "high probability of duplicate or missed slope readings that may [have affected the] overall findings." *Id.* at 2-3. Quarve-Peterson also noted that "Attorney Michenfelder would shuffle his feet along the access aisle and accessible parking space to find slight imperfections in the surface (ie: pebble beneath the asphalt surface). Attorney Michenfelder would then instruct Seifert to re-measure that area." *Id.* at 2.

Furthermore, Seifert took certain measurements for no apparent reason. This is particularly concerning given Quarve-Peterson's assertion that Seifert frequently failed to

measure the relevant aspects of alleged interior and exterior violations. Quarve-Peterson also asserted that no photos were taken of slope readings or tape measurements.[7]

Weisen has not established, by a preponderance of evidence, that Seifert's methods were scientifically valid or reliable. Seifert's own deposition testimony, the fundamental problems Quarve-Peterson witnessed, and Weisen's failure to present evidence concerning Seifert's investigation methods suggest the contrary.

### b. Seifert's Qualifications

Speedway also argues that Seifert is unqualified because he has no training, education, or experience with ADA compliance. Though Siefert has investigated over 150 ADA cases, Speedway points out that Seifert was retained by Weisen's attorneys for every one of those investigations.

The proponent of the expert testimony must show by a preponderance of the evidence that the "expert is qualified to render the opinion." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d at 1000 (quoting *Marmo*, 457 F.3d at 757-58). The appropriate inquiry on qualifications is whether the witness "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Gaps in an expert witness's qualifications or knowledge generally go to the weight of the testimony and not its admissibility. *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1100-01 (8th

---

[7] Seifert's Expert Rebuttal Report does contain one picture of a tape measure inside a crack at the entry door threshold. *See* Seifert Decl. Ex. A, at 9, ECF No. 56-1. According to Quarve-Peterson, "The method Seifert and Attorney Michenfelder used in measuring the entry door threshold was incorrect, leading to possible inaccurate findings." Olson Decl. Ex. D, at 3, ECF No. 64-1. Weisen presents no evidence that this measurement technique was correct.

Cir. 2006) (allowing a neurologist to testify about a shoulder injury). Yet, the Court can consider whether an expert's findings flow from research independent of litigation or solely from litigation. *Lauzon*, 270 F.3d at 692.

The Court finds that Seifert is not qualified to serve as an expert on ADA compliance or ADA compliance measurements. Seifert has acted as an ADA compliance investigator over 150 times, but each of Seifert's investigations was part and parcel of litigation. Moreover, Seifert was retained by Weisen's current attorneys for "each of those over 150 investigations." Olson Decl. Ex. B, Seifert Expert Dep. 43:7-10, ECF No. 64-1. This is problematic given Seifert's admission that he merely "[followed] the instructions of Mr. Michenfelder and Mr. Throndset." *See id.* at 49:3-6.

Seifert's remaining ADA experience consists of one seminar related to ADA accessibility laws. Weisen argues that Seifert's experiences at Midwest Disability Initiative ("MDI") and Disability Research, Inc. ("DRI") bolster his qualifications. However, Seifert himself co-founded MDI in 2016 and was the only employee. Seifert founded DRI in 2019 and is likewise the only employee. Although the stated purpose of both organizations is to advocate for the disabled, Weisen has put forward no evidence of Seifert enacting that purpose outside of the litigation-related investigations Seifert has performed for Weisen's attorneys.

Because Seifert has little training or experience in the ADA compliance industry outside of his involvement in litigation brought by Weisen's attorneys at the Throndset Michenfelder Law Office, Weisen has not established Seifert is qualified to render

opinions on ADA compliance or ADA compliance measurements. The Court grants Speedway's Motion to Exclude Expert Testimony.

## SUMMARY JUDGMENT CLAIMS

Weisen's Amended Complaint lists ten architectural barriers at the Bloomington Speedway in violation of the ADA: (1) "a portion of the disabled accessible parking space(s) and/or access aisles(s) [sic] is steeper than 1:48"; (2) a parking stall access aisle is obstructed by a concrete wheel stop and does not adjoin an accessible route; (3) "an inadequately maintained parking lot with a broken, patched, littered, and deteriorated surface on the entrance route"; (4) the exterior access route is less than 36 inches wide; (5) a lack of at least 5% accessible seating locations; (6) a self-service shelf for tableware, dishware, and/or condiments is too high and too deep; (7) a self-service drinking station is too high; (8) a self-service shelf for food items is too high and too deep; (9) a toilet paper dispenser is too far from the toilet; and (10) a bathroom coat hook is too high. Am. Compl. ¶ 21, ECF No. 12. The Amended Complaint also alleges that Speedway's policies, procedures, and practices violate the ADA.

Speedway moves for summary judgment on the grounds that Weisen lacks standing, Weisen's claims are moot, and as a sanction for spoliation of evidence. Weisen moves for partial judgment on his claims as they relate to barrier (1), the slope of the accessible parking space and access aisle, and barrier (7), the height of the hot water dispensing device at the self-service drinking station.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." When analyzing a summary judgment motion, "facts must be viewed in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). To survive a defendant's motion for summary judgment, the plaintiff must present "sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy." *Reed v. City of St. Charles*, 561 F.3d 788, 790-91 (8th Cir. 2009) (internal quotations and citations omitted).

## I.       Standing

To demonstrate standing, a plaintiff must prove an injury in fact, a causal relationship between the challenged conduct and the injury, and that the injury will be redressed by a favorable decision. *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 545 (8th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An injury in fact is the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Title III of the ADA limits a plaintiff to injunctive relief. *Id.* at 546 (citing 42 U.S.C. § 2000a-3(a), incorporated by reference in § 12188(a)). Therefore, to establish an injury in fact in a Title III ADA case, a plaintiff must first show that architectural barriers caused an actual injury and second show an intent to return to the facility in the "imminent future but for those barriers." *Id.* (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)).

### a. Actual Injury

An ADA plaintiff suffers an actual injury when they intend to enter a place of public accommodation but encounter a barrier that hinders them from doing so. *Smith v. RW's Bierstube, Inc.*, No. 17-CV-1866, 2019 WL 3304919, at *5 (D. Minn. July 23, 2019) (citing *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1011 (8th Cir. 2018)); *see Dalton v. JJSC Props., LLC*, 967 F.3d 909, 913 (8th Cir. 2020) (per curiam); *Disability Support All.*, 885 F.3d at 546-47. A plaintiff need not engage in a "futile gesture" of attempting to access an obviously inaccessible building, but the alleged barrier must have actually deterred them from entering. *Smith*, 2019 WL 3304919, at *5; *see Dalton*, 967 F.3d at 913; *Disability Support All.*, 885 F.3d at 546-47.

In *Disability Support Alliance*, there was evidence that a disabled plaintiff had intended to enter a building but had not exited his vehicle because he could see architectural barriers that he would have been unable to traverse. 885 F.3d at 545-46. There was also evidence in the record contradicting this: the building was locked; visitors with scheduled appointments gained access only upon admission by the building's tenants; and the plaintiff had no appointment. *Id.* Nonetheless, the plaintiff had established a genuine dispute of material fact as to whether he had suffered an actual injury. *See id.* at 546-47.

Speedway argues that Weisen never encountered any of the alleged barriers, pointing out that Weisen did not get out of the car on Labor Day, 2019, and was not at the Bloomington Speedway on November 21, 2019. However, Weisen stated in his sworn declaration that he intended to enter the store on Labor Day, 2019, but was deterred by

the exterior entrance barriers he viewed from the car. As in *Disability Support Alliance*, there is a genuine dispute of material fact as to whether Weisen intended to enter the facility on Labor Day, 2019, and was prevented from doing so by the exterior entrance barriers, barriers (1)-(4).

Though a plaintiff need not engage in a futile gesture of attempting to enter an inaccessible building, a plaintiff who encounters only exterior violations does not have standing to sue over interior violations. *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868, 871 (8th Cir. 2019) (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018)). Here, it is undisputed that Weisen did not enter the Bloomington Speedway on Labor Day, 2019, and there is no genuine dispute over whether Weisen entered the Bloomington Speedway on November 21, 2019. Speedway's surveillance video footage contradicts both Weisen's and his wife's testimony that they visited the Bloomington Speedway on November 21, 2019. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Weisen attempts to overcome the conclusiveness of the surveillance video footage by arguing that Speedway's surveillance cameras do not cover the parking space he and his wife parked in that day. This does not explain why the video never shows any of the other details Weisen and his wife testified to, including: their red Dodge Charger entering or exiting the parking lot; Weisen's wife chasing after Weisen's wheelchair; Weisen or Weisen's wife entering the store; or Weisen and his wife conversing with the store clerk

at the cash register. Weisen also argues that his accurate description of the store clerk in the video footage bolsters the credibility of his and his wife's testimony that they were at the Bloomington Speedway on November 21, 2019. In his deposition, Weisen described the clerk, "He was bigger than me, and I'm six foot. He was a big guy." Olson Decl. Ex. E, 2nd Weisen Dep. 321:3-7, ECF No. 50-1. Weisen's vague description of the clerk cannot overcome the fact that neither Weisen nor his wife appear in the video talking with the clerk.

Because there is no genuine dispute that Weisen did not enter the Bloomington Speedway, Weisen does not have standing to bring claims related to the alleged interior barriers, barriers (5)-(10). *See Davis*, 922 F.3d at 871 (citing *Davis*, 886 F.3d at 678). Therefore, The Court grants summary judgment on Weisen's claims as they relate to the interior barriers.

### b. Intent to Return

In addition to demonstrating an actual injury, an ADA Title III plaintiff must demonstrate an intent to return to the facility where they experienced the actual injury. *Disability Support All.*, 885 F.3d at 546. "Intent to return to the place of injury 'some day' is insufficient." *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) (quoting *Steger*, 228 F.3d at 893 (quoting *Lujan*, 504 U.S. at 564 (finding the plaintiffs' "some day" intentions to travel halfway across the globe to observe endangered species insufficient to establish an "imminent" future injury))). While the Eighth Circuit has no definitive test to decide whether a plaintiff possesses the requisite intent to return, district courts often consider the following factors: (1) the plaintiff's

proximity to the place of accommodation; (2) the frequency of the plaintiff's nearby travel; (3) the plaintiff's past patronage of the place of accommodation; and (4) the definiteness of the plaintiff's plans to return. *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1112 (D. Minn. 2014); *see also Dalton v. Simonson Station Stores, Inc.*, No. 0:17-cv-04427, 2019 WL 5579981, at *9 (D. Minn. Oct. 29, 2019) (listing cases applying these four factors), *aff'd*, 830 F. App'x 486 (8th Cir. 2020) (per curiam).

There is sufficient evidence on which a factfinder could find that Weisen intends to return to the Bloomington Speedway. The first factor, proximity, weighs against Weisen because he lives seventy-six miles away. Nevertheless, both the frequency factor and the past patronage factor weigh in favor of Weisen's intent to return at the summary judgment stage. *See Scott*, 550 U.S. at 380 (finding a court views the evidence at summary judgment in favor of the non-moving party). Weisen has submitted a sworn declaration that he routinely passes the Bloomington Speedway on his way to visit friends in Faribault two or three times a year. Weisen's wife testified that she has been to the Bloomington Speedway numerous times and that Weisen frequented the Bloomington Speedway even before he became disabled.

The final factor, definiteness of plans to return, also weighs in Weisen's favor at the summary judgment stage. Unlike the plaintiffs in *Lujan*, Weisen is not travelling halfway across the globe. Weisen's situation is more similar to the plaintiff's situation in *Sawczyn*. The plaintiff in *Sawczyn* did not need to establish the exact date he intended to return to the defendant's ATMs because ATM visits are spontaneous in nature and do not require concrete, advanced planning. 8 F. Supp. 3d at 1113. Visits to convenience stores

and gas stations are similarly impromptu. People stop at convenience stores when it is convenient. People stop at gas stations when they need gas. While Weisen has not indicated a specific date on which he plans to return to the Bloomington Speedway, he passes it whenever he visits his friends in Faribault. A reasonable factfinder could find that Weisen's plan to return to the Bloomington Speedway on his way to or from Faribault to obtain food, drinks, or gas, when necessary and convenient, is sufficiently definite.

In sum, there is a genuine dispute of material fact as to whether Weisen originally intended to enter the Bloomington Speedway and was deterred from doing so by the exterior entrance barriers. There is also a genuine dispute of material fact as to whether Weisen intends to return to the Bloomington Speedway in the imminent future. Accordingly, the Court denies Speedway's standing arguments as they relate to the exterior barriers, barriers (1)-(4). The Court also denies Weisen's Motion for Partial Summary Judgment as Weisen will have to establish standing at trial.

## II.    Mootness

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). In a Title III ADA case, a defendant's permanent physical improvements eliminate the case or controversy if they provide the requested relief. *Hillesheim v. O.J.'s Cafe, Inc.*, 968 F.3d 866, 868 (8th Cir. 2020) (per curiam) (citing *Davis*, 922 F.3d at 870). A plaintiff's

request for nominal damages cannot establish a case or controversy in a Title III case because Title III limits a plaintiff to injunctive relief. *See Disability Support All.*, 885 F.3d at 546 (citing 42 U.S.C. § 2000a-3(a), incorporated by reference in § 12188(a)); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006).

Speedway argues that Weisen's claims are moot as it has remediated all of the alleged ADA violations. Because Weisen does not have standing to bring his claims as they relate to the interior barriers, the Court will not consider them in its mootness analysis. The Court will address the exterior barriers: (1) "a portion of the disabled accessible parking space(s) and/or access aisles(s) [sic] is steeper than 1:48"; (2) a parking stall access aisle is obstructed by a concrete wheel stop and does not adjoin an accessible route; (3) "an inadequately maintained parking lot with a broken, patched, littered, and deteriorated surface on the entrance route"; and (4) the exterior access route is less than 36 inches wide. Am. Compl. ¶ 21, ECF No. 12. The Court will also address Weisen's allegation that Speedway's policies, practices, and procedures are not ADA compliant.

### a. Barrier 1: A Portion of the Accessible Parking Space(s) and/or Access Aisle(s) Is Too Steep

The slopes of accessible parking spaces and access aisles must not be steeper than 1:48 or 2.08%. 2010 Standard 502.4. Speedway's expert, Quarve-Peterson, found the Bloomington Speedway compliant in this regard. Fifty-four of the fifty-six measurements she took had slopes less than 2%. The other two measurements were 2.3% and 2.7%. Weisen argues that the two slope measurements above 2% preclude summary judgment.

However, Weisen offers no evidence that these two measurements would ultimately affect his access to the Bloomington Speedway, particularly in light of the fifty-four compliant measurements. *See Hillesheim*, 968 F.3d at 868 (finding that the plaintiff could not "seek relief by alleging an ADA violation that would not affect his access"). Nor does Weisen offer admissible evidence in response to Quarve-Peterson's assertion that the tolerance of the slope reader can explain the two noncompliant measurements. Weisen's claims are therefore moot in so far as they rely on the slopes of the accessible parking space and access aisle.

### b. Barrier 2: A Parking Stall Access Aisle Is Obstructed and Does Not Adjoin an Accessible Route

Access aisles must adjoin accessible routes. 2010 Standard 502.3. Quarve-Peterson found that the Bloomington Speedway was compliant in this regard. Weisen does not dispute this. Accordingly, Weisen's claims are moot as to the parking stall access aisle.

### c. Barrier 3: An Inadequately Maintained Parking Lot

Floor and ground surfaces must be stable, firm, and slip resistant. 2010 Standard 302.1. Quarve-Peterson found that the Bloomington Speedway's parking lot was compliant. Again, Weisen does not dispute this finding. Weisen's claims are moot as they relate to the parking lot.

### d. Barrier 4: The Exterior Access Route Is Less Than 36 Inches Wide

Walking surfaces must be at least thirty-six inches wide. 2010 Standard 403.5.1. Quarve-Peterson found the Bloomington Speedway compliant in this regard. Weisen

does not dispute this finding. Weisen's claims are moot in so far as they rely on the exterior access route.

### e. Speedway's Policies, Practices, and Procedures

Weisen argues that his claims are not moot in so far as he seeks injunctive relief directing Speedway to modify its polices, practices, and procedures. In his Amended Complaint, Weisen alleges, "Defendants' policies, procedures, and practices (including, but not limited to, those ensuring the identification and remediation of prohibited barriers, maintenance of accessible features, training and future compliance) are inadequate to ensure ongoing compliance with the ADA and therefore must be modified accordingly." Am. Compl. ¶ 54, ECF No. 12.

Pointing to *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858 (D. Minn. 2019),[8] Speedway argues that Weisen's policy allegation is moot because it relies on claimed architectural barriers that have all been remedied. In *Boitnott*, the court found that a general allegation concerning the defendant's noncompliant ADA policies "relie[d] on inferences derived from claimed architectural barriers that [had] undisputedly been remedied." 361 F. Supp. 3d at 867-68. The allegation was moot because each of the alleged ADA barriers had been mooted. *Id.* at 868. The court reasoned, "To the extent that Defendants' policies, practices, or procedures may have been inadequate when Boitnott commenced this lawsuit, the record reflects that Defendants voluntarily

---

[8] Weisen's childhood friend, Jerald Boitnott, is the plaintiff in *Boitnott v. Border Foods, Inc*. Weisen's attorneys at the Thronset Michenfelder Law Office represented Boitnott in the case. Indeed, the complaint in *Boitnott* uses the same language as the Amended Complaint here.

remedied those inadequacies." *Id.* Conversely, in *Sawczyn*, there was a genuine dispute as to whether the defendant's ADA policies were compliant in part because there was a dispute as to whether the defendant had remedied each of its alleged ADA violations. 8 F. Supp. 3d at 1114.

Here, Speedway has identified and remedied the alleged barriers that Weisen has standing to sue over. Because Weisen merely "relies on inferences derived from claimed architectural barriers that have undisputedly been remedied," Weisen's allegation concerning Speedway's policies, practices, and procedures has been mooted. *See Boitnott*, 361 F. Supp. 3d at 867-68.

## III. Evidence Spoliation

Speedway also seeks summary judgment as a sanction for evidence spoliation.[9] Speedway argues that Weisen spoliated evidence when he refused to provide the date and time he originally visited the Bloomington Speedway because Speedway needed this information to preserve its surveillance video footage. Speedway also points out that its surveillance video footage contradicts the testimony that Weisen and his wife visited the Bloomington Speedway on November 21, 2019.

A spoliation-of-evidence sanction requires a finding of intentional destruction. *E.g.*, *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012). Here, Speedway makes no claim that Weisen intentionally destroyed the surveillance video footage. Nor

---

[9] As an alternative, Speedway seeks an adverse-inference instruction. The Court need not consider potential jury instructions at this stage in the litigation. *See Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460-61 (8th Cir. 2013).

could it. Weisen had no control over the footage itself. Rather, Speedway is arguing that it lost the opportunity to preserve evidence within its own control. Speedway provides no authority on which the Court could find that this amounts to evidence spoliation, and the Court therefore rejects Speedway's argument.

## IV.    Attorney Fees and Costs

Finally, Speedway seeks attorney fees and costs. The Court has discretion to award fees and costs to the prevailing party in an ADA case under 42 U.S.C. § 12205. "A prevailing defendant in an ADA case is entitled to attorney fees only in very narrow circumstances." *Quasius v. Schwan Food Co.*, Civil No. 08-575, 2010 WL 3218591, at *1 (D. Minn. Aug. 13, 2010) (internal quotations omitted). A plaintiff need pay the defendant's fees only if the court finds that the claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)); *see also Smith*, 2019 WL6464142, at *1 (finding "every circuit court to have addressed the issue has applied the *Christiansburg* standard to [ADA] defendants' requests for attorney's fees under § 12205").

Here, Speedway offers no explanation as to how it fits into the "very narrow circumstances" that allow an ADA defendant to procure fees. For example, Speedway does not argue that Weisen's claims were frivolous, unreasonable, or groundless. Speedway's request for fees and costs is therefore denied.

## V. Results

Speedway seeks dismissal of Weisen's claims with prejudice. Nevertheless, "[w]hen a federal court lacks subject-matter jurisdiction over a removed claim, it 'must remand it to state court' even if, as is true here, the removed claim is one arising under federal, not state, law." *Hillesheim*, 903 F.3d at 791-92 (cleaned up) (quoting *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014)); *see also* 28 U.S.C. § 1447(c). Weisen's original Summons and Complaint identified the Fourth Judicial District of the State of Minnesota, Hennepin County. Speedway then removed the action to federal court. Because Weisen lacks standing to bring some of his claims and Speedway has mooted Weisen's other claims, the Court remands the action to the Fourth Judicial District of the State of Minnesota, Hennepin County.

**CONCLUSION**

Based on the files, records, and proceedings herein, and for the reasons stated

above, IT IS ORDERED THAT:

1.  Plaintiff's Motion to Strike Untimely Disclosed Video and Require Defendants to Disclose the Identity of the Clerk Appearing on the Video and Permit Plaintiff to Immediately Depose Him [ECF No. 83] is DENIED.

2.  Defendants' Motion to Exclude Expert Testimony [ECF No. 60] is GRANTED.

3.  Plaintiff's Motion for Partial Summary Judgment [ECF No. 52] is DENIED.

4.  Defendants' Motion for Summary Judgment [ECF No. 46] is GRANTED. Weisen's claims are REMANDED to the Fourth Judicial District of the State of Minnesota, Hennepin County.

    a.  The Clerk of Court shall send a certified copy of this Order to the Clerk of the Fourth Judicial District of the State of Minnesota, Hennepin County.

Dated: June 29, 2021

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
